IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    Plaintiff,                )<br>                              )<br>v.                              )<br>                              )<br>                              )<br>MURQUISE D. WOODEN,    )<br>    Defendant.                 ) | Case Nos. 22-cr-30041 |

<u>OPINION</u>

**COLLEEN R. LAWLESS, United States District Judge:**

Defendant Murquise D. Wooden moves to dismiss the Superseding Indictment on the basis that §922(g)(1) is unconstitutional both on its face and as applied to him. (Doc. 30). Mr. Wooden's criminal history and parole status at the time of the alleged offense demonstrate he is not a "law-abiding, responsible" citizen entitled to possess a firearm under the Second Amendment. Defendant Wooden's Motion to Dismiss Indictment and Superseding Indictment as Unconstitutional is DENIED.

I.  **BACKGROUND**

Defendant Wooden is charged in a single-count Superseding Indictment with Possession of Firearm by Prohibited Person—Felon, in violation of 18 U.S.C. § 922(g)(1).

According to the Pretrial Services Report, Defendant has previous convictions involving violent felonies. (Doc. 9). At age 17, Defendant pled guilty to aggravated discharge of a firearm and was placed on probation for 12 months. He violated his probation and was sentenced to 54 months in the custody of the Illinois Department of Corrections (IDOC). In 2008, Defendant was convicted of aggravated vehicular

hijacking/weapon and sentenced to 10 years in prison for his taking of the victim's car at gunpoint. (*Id.* at 6). In 2015, Defendant was convicted and sentenced to 14 years for committing home invasion and aggravated battery when Defendant and two other individuals entered a home to rob the occupants and one of the three assailants used a firearm to bludgeon a victim. (*Id.* at 5-6).

## II.    LEGAL STANDARD

Rule 12(b)(3) authorizes a defendant to dismiss an indictment prior to trial if the indictment contains a defect. Fed. R. Crim. P. 12(b)(3)(B)(v). To succeed on a facial challenge to the constitutionality of a statute, the movant must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). The challenger must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In an as-applied challenge, the movant must show that the statute is unconstitutional because of the way it is applied to the particular facts of their case. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## III.    DISCUSSION

Defendant argues that the Second Amendment covers § 922(g)(1)'s permanent prohibition on firearm possession and encompasses felons as members of "the people" who have the right "to keep and bear Arms." Defendant further argues without a history of similar laws, the Government cannot demonstrate that § 922(g)(1)'s permanent deprivation is consistent with the Nation's historical tradition of firearm regulation.

Citing the numerous courts since *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) that have upheld the constitutionality of § 922(g)(1), the Government asks the

Court to hold that (1) the plain text of the Second Amendment does not presumptively protect the right of felons to possess firearms; and (2) even if it did, § 922(g)(1) is constitutional as applied to all felons because it "is consistent with the Nation's historical tradition of firearm regulation" under *Bruen*. (Doc. 32 at 2).

The Government contends that, assuming the Second Amendment's text encompasses felons' possession of firearms, Defendant's challenge to § 922(g)(1) fails because the "regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" under *Bruen*. There is a historical tradition of legislatures enacting regulations to disarm categories of individuals dating back to England and continues through the founding era. (*Id.*) Specifically, the Government points to two types of historical laws: (1) laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms, and (2) laws authorizing capital punishment and estate forfeiture for felonies.

**A. Section 922(g)(1) and Supreme Court Precedent**

Section 922(g)(1) makes it an offense for a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Based on the framework articulated by the Supreme Court in *Bruen*, Defendant alleges § 922(g)(1) violates the Second Amendment and the Superseding Indictment must be dismissed.

Prior to *Bruen*, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), noted the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. The Court explained that, "in all

six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not just an unspecified subset." *Id.* at 580. Based on that language, Defendant contends the Second Amendment applies to felons and non-felons alike. However, the Court in *Heller* further held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense, but noted that the right to keep and bear arms "is not unlimited" and remains subject to "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 635, 626-27; *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (extending *Heller* to state and local governments while reiterating that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'")

The Supreme Court has repeatedly stated that "the people" protected by the Second Amendment include "ordinary, law-abiding, adult citizens," *see Bruen*, 597 U.S. at 31-32, who are "members of the political community," *see Heller*, 554 U.S. at 580; *see also McDonald*, 561 U.S. at 786 (emphasizing *Heller*'s holding). The first sentence of *Bruen* refers to the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" as protected by the Second Amendment. *Bruen*, 597 U.S. at 8-9. The Court reiterated that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Id.* at 26 (quoting *Heller*, 554 U.S. at 635). The final paragraph of the majority opinion in *Bruen* states in part: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep

and bear arms." *Id.* at 71. Thus, *Bruen* and *Heller* clearly articulate that the Second Amendment protects the right of responsible, law-abiding citizens to possess firearms.

In *Bruen*, the Supreme Court announced that lower courts should no longer balance interests such as an individual's right to possess a firearm and the state's commitment to promoting personal or public safety to determine the constitutionality of the challenged restriction. Based on the Second Amendment's text and the applicable history of firearms regulation, the government now bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Because people convicted of felonies existed in the United States when the Second Amendment was ratified in 1791, it follows that § 922(g)(1) addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 597 U.S. at 26.

When a challenged regulation addresses a longstanding societal problem, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* If "the Founders themselves could have adopted" a particular regulation to confront a longstanding problem and did not do so, that could suggest that the law today is unconstitutional. *Id.* For "modern regulations that were unimaginable at the founding," the government must produce historical evidence that is "relevantly similar." *Bruen*, 597

U.S. at 28-29. "[I]f earlier generations addressed the societal problem, but did so through materially different means, that could also be evidence that a modern regulation is unconstitutional." *Id.* at 26-27.

The Supreme Court instructed courts to identify historical analogues to modern firearm regulations by assessing "how and why regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. While the Court in *Bruen* did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it directed courts to weigh as central considerations "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* The Court further stated:

> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 30 (internal quotation marks and citations omitted).

### B. *United States v. Rahimi*

In *United States v. Rahimi*, 144 S. Ct. 1889 (2024), the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if the order includes a finding that he "represents a credible threat to the physical safety of an intimate partner,"

or a child of the partner or individual. *Id.* at 1894. In considering the constitutionality of the statute, the Court examined historical surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond" and "going armed laws," which "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at 1900-01 (citation omitted). The Court noted the "two distinct legal regimes," established that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896, 1899. In rejecting Rahimi's challenge to § 922(g)(8), the Court held that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

### C. Appellate Decisions Interpreting *Bruen* and *Rahimi*

In *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023), the *en banc* Third Circuit became the first appellate court post-*Bruen* to hold § 922(g)(1) unconstitutional in an as-applied challenge. *Id.* at 98. In 1995, Range pled guilty and successfully completed a probationary sentence in Pennsylvania state court for one count of making a false statement to obtain food stamps. *Id.* His only other criminal infractions included minor traffic, parking tickets, and a fishing without a license violation. *Id.* He filed a declaratory judgment action seeking a declaration that § 922(g)(1) violated the Second Amendment as applied to him. *Id.* at 99. The Third Circuit determined Range was among "the people" protected by the Second Amendment. *See Range*, 69 F.4th at 102. The Supreme Court has since

vacated the judgment in *Range* and remanded the case to the Third Circuit for further consideration in light of *Rahimi*. *Garland v. Range*, 144 S. Ct. 2706 (July 2, 2024).

In noting that neither *Bruen* nor *Range* called into question § 922(g)(1)'s facial constitutionality or addressed its constitutionality in the criminal prosecution context, the Third Circuit has since made clear that its decision in *Range* would not apply to an individual like the Defendant in this case. *See United States v. Fadiga*, 2024 WL 3338304, at *3 (3d Cir. July 9, 2024). "*Bruen* did not cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* (internal quotation marks and citation omitted). The court explained:

> Range and Fadiga are different. Range had (1) a single, decades-old welfare fraud conviction; (2) received no prison time; and (3) showed that he wished to possess firearms for self-defense and hunting, *Range*, 69 F.4th at 98-99, whereas Fadiga is a criminal defendant who had (1) numerous criminal convictions, including for robbery, theft, and firearms offenses within the five years preceding the instant offense; (2) served several stints in prison and committed this offense while on probation; and (3) not sought civil relief before illegally possessing firearms.

*Id.* The court thus concluded that § 922(g)(1) did not violate the Second Amendment as to Fadiga. *Id.*

Several other circuits have upheld § 922(g)(1) since *Bruen*. *See Vincent v. Garland*, 80 F.4th 1197, 1199-1202 (10th Cir. 2023) (upholding a § 922(g)(1) challenge as to a nonviolent felon who had been convicted of bank fraud) and *United States v. Jackson*, 69 F.4th 495, 505-06 (8th Cir. 2023) ("[T]he Supreme Court's assurances . . . cast no doubt on the constitutionality of laws prohibiting [felon firearm possession] [so] we conclude that [§ 922(g)(1)] is constitutional as applied."), *reh'g en banc denied*, 85 F.4th 468 (8th Cir. 2023).

Both *Vincent* and *Jackson* were vacated by the Supreme Court and remanded for further consideration in light of *Rahimi*. *Vincent v. Garland*, 144 S. Ct. 2708 (July 2, 2024); *Jackson v. United States*, 144 S. Ct. 2710 (July 2, 2024).

On remand, the Eighth Circuit recently held *Rahimi* does alter its prior conclusion that § 922(g)(1) is constitutional as applied, explaining:

> The historical record suggests that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, not merely to address a person's demonstrated propensity for violence. This conclusion is bolstered by the Supreme Court's repeated statements in *Bruen* that the Second Amendment protects the right of a "law-abiding citizen" to keep and bear arms. *See* 597 U.S. at 8, 15, 26, 29-31, 33 n.8, 38, 60, 70. As stated by the D.C. Circuit, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019); *cf. Rahimi*, 144 S. Ct. at 1902 ("[I]f imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible.").
>
> On this view, for which there is considerable support in the historical record, Congress did not violate Jackson's rights by enacting § 922(g)(1). He is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society.

*United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024).

The Fifth Circuit recently affirmed the constitutionality of § 922(g)(1) against a facial and as-applied challenge by a felon who had convictions for vehicle theft, evading arrest, and gun possession crimes. *United States v. Diaz*, 116 F.4th 458, 461-62 (5th Cir. 2024). "At the time of the Second Amendment's ratification, those—like Diaz—guilty of certain crimes—like theft—were punished permanently and severely. And permanent

disarmament was a part of our country's arsenal of available punishments at that time." *Id.* at 472. The court determined § 922(g)(1) "fits neatly" in that tradition, concluding it was facially constitutional and as applied to Diaz. *Id.* The Tenth Circuit also recently rejected a facial challenge to § 922(g)(1) because "*Rahimi* does not indisputably and pellucidly abrogate" its prior decisions upholding the statute's constitutionality. *United States v. Curry*, 2024 WL 3219693, at *4 n.7 (10th Cir. June 28, 2024).

In *United States v. Johnson*, 2024 WL 3371414 (11th Cir. July 11, 2024), the Eleventh Circuit considered the constitutionality of § 922(g)(1) on plain error review. *Id.* at *1. The court noted it previously rejected a similar challenge to the statute following *Bruen* and concluded that *Rahimi* did not change its analysis, stating that the Court "once again declared that the prohibition on the possession of firearms by felons is presumptively lawful." *Id.* at *3 (internal quotation marks and citation omitted). In *United States v. Langston*, 110 F.4th 408 (1st Cir. 2024), the First Circuit also determined the district court did not plainly err in refusing to dismiss a § 922(g)(1) charge because "[n]o case from the Supreme Court or our court holds that § 922(g)(1) is unconstitutional in any of its applications" and "the Supreme Court has stated repeatedly over sixteen years, from *Heller* to *Rahimi*, that felon-in-possession laws are presumptively lawful." *Id.* at 419-20.

In considering whether an individual with felony convictions is permitted under the Second Amendment to possess both firearms and ammunition, the Seventh Circuit in a case decided prior to *Rahimi* noted that the defendant's argument is hard to square with *Heller*'s unequivocal statement that "longstanding prohibitions on the possession of firearms by felons" are valid. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir 2024) (citation

omitted). Moreover, the Supreme Court in *McDonald* reiterated that all of the reservations and provisos in *Heller* remain valid. *Id.* "And in the Court's most recent Second Amendment decision . . . *Bruen* . . . Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*." *Id.* (citing *Bruen*, 597 U.S. at 72, 142 S. Ct. 2111 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80-81, 142 S. Ct. 2111 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons)). *Id.*

### D. Defendant's Challenges to § 922(g)(1)

Defendant's argument that § 922(g)(1) is categorically unconstitutional is without merit because the Government has shown that the statute is constitutional in some of its forms. *See Rahimi*, 144 S. Ct. 1898 (A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Additionally, the Seventh Circuit's reasoning in *Gay* forecloses Defendant's facial challenge to § 922(g)(1). *See, e.g., United States v. Fillyaw*, 2024 WL 3338940, at *1 (N.D. Ill. July 9, 2024) (Kennelly, J.) ((holding criminal defendants are foreclosed by *Gay* from facially challenging the constitutionality of § 922(g)(1)); *United States v. Barenas-Reynoso*, 2024 WL 3509757 at *2 (N.D. Ill. Jul 23, 2024) (Coleman, J.)

(holding the same); *United States v. Leverston*, 2024 WL 2018279, at *1 (N.D. Ill. May 6, 2024) (Blakey, J.) (holding the same). Therefore, Defendant's facial challenge to the constitutionality of § 922(g)(1) fails.

Citing *Range* and *Vincent*, the court in *Gay* went on to "assume for the sake of argument that there is *some* room for as-applied challenges, but that assumption does not assist Gay." *Id.* The Seventh Circuit noted the emphasis in *Bruen* on the phrase "law-abiding, responsible citizens" or similar language and determined that it did not describe Gay, who had been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon in prison. *Id.* at 847. Gay was also on parole and subject to a condition that he would not possess a firearm at the time of underlying offense. *Id.* The Seventh Circuit concluded, "Just as *Samson* holds that parolees lack the same privacy rights as free persons, we conclude that parolees lack the same armament rights as free persons." *Id.* (comparing *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) (person on bail awaiting trial lacks a constitutional right to carry firearms)). The Seventh Circuit also found it significant that Range had challenged § 922(g)(1) through a declaratory judgment action, unlike Gay who had "violated the law in secret and tried to avoid detection." *Id.*

To the extent that some individuals might be able to raise a successful as-applied challenge to § 922(g)(1), the Court concludes Defendant would not be one of those individuals for the same reason the Seventh Circuit determined that Gay was not. Defendant has an extensive criminal history that includes multiple felony convictions for violent offenses, two of which involved a firearm. Defendant was also prohibited from

possessing a firearm at the time of the offense because he was on parole or supervised release. *See Gay*, 998 F.4th at 847. Therefore, Defendant is not a "law-abiding, responsible citizen" who is entitled to possess a firearm under the Second Amendment.

IV. **CONCLUSION**

For the reasons stated herein, Defendant's facial challenge to § 922(g)(1) cannot succeed following the Seventh Circuit's decision in *Gay*. Assuming that an as-applied challenge to the statute can be made, Defendant's extensive criminal history indicates he is not among the "law-abiding, responsible citizens" who retains the constitutional right to possess firearms for self-defense. Therefore, Defendant Murquise D. Wooden's Motion to Dismiss Indictment and Superseding Indictment as Unconstitutional [Doc. 30] is DENIED.

ENTER: December 20, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE